# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:10cv423

| | |
|---|---|
| TAMMY HATLEY, ) | |
| Plaintiff, ) | |
| Vs. ) | ORDER |
| CITY OF CHARLOTTE, ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's Motion for Summary Judgment (#23) and the defendant's Motion for Summary Judgment (#25). Having carefully considered those motions and conducted a hearing, the court enters the following findings, conclusions, and Order granting in part and denying in part the motions for summary judgment, and directing the Clerk of this court to place this matter on the December 2011 trial calendar.

## FINDINGS AND CONCLUSIONS

### I.  Nature of the Claims

In this action, plaintiff contends that the City of Charlotte Metropolitan Police Department (hereinafter "CMPD") denied her the protections afforded under the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it demoted her from "Response Area Commander (hereinafter "RAC"), which carried with it staff sergeant insignia, back down to sergeant. Plaintiff also contends that such employment action violated similar protections afforded under the North Carolina Constitution, the Contracts Clause of the United States Constitution, amounted to a breach of contract, and violated legislatively delegated powers under North Carolina law. For the reasons discussed below, the court will dismiss the Contracts Clause claim, the breach of contract claim, and the

delegated powers claims, grant summary judgment in favor of plaintiff on the issue of liability under the federal and state due process claims, and set this matter on for trial as to the issue of damages.

## II. Factual Background

The following factual background is intended to aid the decision-making process and is not intended to bind the court or the parties at trial. As agreed to by all parties at the hearing, the decisive issue is whether plaintiff's elevation from the position of sergeant to the position of staff sergeant was a promotion or whether it was simply a temporary assignment, not carrying with it any cognizable property interest recognized by North Carolina law and, therefore, not protected from deprivation under either the federal or state constitution. Defendant contends that plaintiff was not promoted and, therefore, had no procedural due process rights or similar state constitutional rights when her assignment was terminated. In stark contrast to that argument, plaintiff has come forward with not only evidence that she was promoted, but direct evidence that defendant represented to her and others that her elevation from sergeant to staff sergeant was a promotion.

Defendant does not dispute that when plaintiff and 38 other sergeants were selected to fill the role of RAC in 2008, CMPD held a ceremony which it called a "promotion ceremony" at which all 39 sergeant were presented by defendant with insignia indicating that they had been promoted to the rank of staff sergeant, which is another stripe for a non-commissioned officer. It is equally undisputed that in preparation for such ceremony, CMPD sent the 39 successful candidates a memorandum captioned "Your New Rank," which provided the candidates with information and instructions concerning the formal promotion ceremony. In addition to supplying plaintiff with new insignia at the ceremony, CMPD also provided plaintiff with a take home car, additional authority over and responsibility for the

sergeants working in her response area, and a substantial pay increase of seven percent. Two years after going through such promotion ceremony, in 2010 she and two other RACs were demoted back down to the rank of sergeant and replaced by other sergeants. While defendant argued that some process was provided, it is undisputed that plaintiff did not receive notice from or an opportunity to be heard by the Charlotte Civil Service Board (hereinafter "CSB") before being demoted.

The parties agree that the pivotal issue is whether plaintiff was promoted. At the hearing, defendant argued how this was not a promotion to a higher rank inasmuch as it never presented the elevations to the CSB. Rather, it argued that the position of RAC was simply another special assignment within the rank of sergeant and that plaintiff had received any number of special assignments during her long career with CMPD, including assignment to a hostage negotiation team. Upon questioning by the court, defendant conceded at the hearing that it had never before held a promotion ceremony or awarded another stripe for any special assignment.

The court has also considered the context of the elevation of plaintiff to the position of staff sergeant. In June 2008, Chief Monroe was hired as CMPD Chief. In July 2008, he began restructuring the police department by increasing the number of officers on the streets and increasing accountability for performance. Rodney Monroe First Affidavit (hereinafter "First Monroe Aff."), at ¶ 4. One of the measures he implemented was to emphasize crime fighting and prevention by geographic response area rather than function. Id., at ¶ 5. He divided the City of Charlotte into 39 response areas and held individuals responsible for each of those areas. Id. It is undisputed that before Chief Monroe came on board, there were four ranks in the police departments: sergeant; captain; major; and deputy chief. To ensure such accountability, Chief Monroe attempted to add the rank of lieutenant in 2008-2009, with

−3−

lieutenants assigned as RACs; however, the downturn in the economy prevented the City of Charlotte from authorizing that rank. Id., at ¶ 6. Instead, Chief Monroe created temporary RAC positions and staffed those positions not with lieutenants, but with sergeants already on the payroll, providing each with an additional stripe.

It is at this point that the factual submissions diverge. Plaintiff described the process of her selection as "competitive," while the defendant described it "as a temporary special assignment" which was "open to qualified sergeants throughout the department." Id., at ¶ 7 & Ex. A. Further, defendant contends that this temporary special assignment was intended as a stop-gap measure until CMPD could adopt and budget a new rank of lieutenant; however, it was undisputed that nearly three years later, when the court conducted the hearing, the issue of approving and funding lieutenants was only then coming on to be heard by city council. According to defendant, the City Manager has now approved implementation of the rank of lieutenant during the 2011-2012 fiscal year. Kerr Putney Affidavit ("Putney Aff."), at ¶ 20.

### III. Plaintiff's Claims

Plaintiff has asserted the following causes of action: (1) breach of contract; (2) a Section 1983 violation of her Fourteenth Amendment right to procedural due process; (3) a Section 1983 violation of the Contracts Clause contained in U.S. Const. Art. I, § 10; (4) violation of the "Law of the Land" clause in N.C. Const. Art. 1, § 19; and (5) violation of the City's legislatively delegated power under N.C. Const. Art. VII, § 1 and N.C. Session Law 2000-26.

### IV. Applicable Standards

-4-

### A.     Cross Motions for Summary Judgment

The respective parties have each filed a motion for summary judgment. Where cross motions for summary judgment are filed, such motions are

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.
> In short, the mere fact that both parties seek summary judgment does not constitute a waiver of a full trial or the right to have the case presented to a jury.

Wright & Miller, 10A *Fed. Prac. & Proc. Civ.3d* § 2720.

### B.     Summary Judgment Standard

In moving for summary judgment, the parties generally contend that no genuine issues of fact remains for trial. Plaintiff contends that no genuine issue remains as to liability as it is clear that she was promoted and that the only issue that remains is damages. Defendant contends that no genuine issue of fact remains for trial and that it is entitled to judgment on plaintiff's state and federal due process claims, because plaintiff could not have been demoted in violation of any federal or state constitutional protection inasmuch as she never had a property interest in her RAC assignment. In addition, defendant has argued for summary judgment on separate grounds as to the plaintiff's claims under the Contracts Clause, for breach of contract, and based on delegated powers.

In conducting such review, the court is guided by Rule 56(a), Federal Rules of Civil Procedure, which provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

−5−

Case 3:10-cv-00423-MOC-DCK   Document 41   Filed 11/28/11   Page 5 of 18

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> **(c) Procedures.**
>> (**1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>>
>> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>>
>> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>>
>> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

Even though modified in 2010, on a motion for summary judgment, Rule 56 still provides that the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a

factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

**V. Discussion**

    **A. First Cause of Action: Breach of Contract**

Plaintiff contends that the provision in the City Charter entitling her to a hearing before the Civil Service Board before being demoted amounts to a contract between her and the City of Charlotte. Complaint ¶ 10. While the City Charter may well create a property interest in continued employment, Wuchte v. McNeil, 130 N.C.App. 738, 741 (1998), it is established that North Carolina and its municipalities remain at-will employers unless some contract is entered into between employer and employee. Plaintiff's attempt to use the City

–7–

Charter as a basis for a contract is unavailing as a matter of law. In <u>Paschal v. Myers</u>, 129 N.C. App. 23 (1998),the Court of Appeals held, as follows:

> [w]e decline to hold that mere adoption of [the municipality's] personnel policies as an ordinance, makes those personnel policies a part of plaintiff's employment contract.

<u>Id.</u>, at 29.

In order to state a claim for breach of contract under North Carolina law, the following essential elements must be alleged and sufficient evidence must be presented to support the claim on summary judgment:

(1) a legal obligation of plaintiff to the defendant;

(2) a violation or breach of that right or duty; and

(3) a consequential injury or damage to the defendant.

<u>See</u> <u>generally</u> <u>Investment Properties v. Norburn</u>, 281 N.C. 191 (1972). Other than the City Charter, plaintiff has pointed to no agreement between her and the defendant as to her employment.

> North Carolina courts have consistently held that in the absence of some form of contractual agreement between an employer and employee creating a definite period of employment, "the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of the performance by the other party." *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). Thus, an at-will "employee states no cause of action for breach of contract by alleging that he has been discharged without just cause." *Id.* In addition, our courts have held that " 'unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it,' " *Rucker v. First Union Nat. Bank*, 98 N.C.App. 100, 102, 389 S.E.2d 622, 624 (1990) (*quoting Rosby v. General Baptist State Convention*, 91 N.C.App. 77, 81, 370 S.E.2d 605, 608 (1988)), or in the case of local governments, they are enacted as ordinances, *Wuchte v. McNeil*, 130 N.C.App. 738, 741, 505 S.E.2d 142, 144 (1998).

<u>Guarascio v. New Hanover Health Network, Inc.</u>, 163 N.C.App. 160, 164 (2004). More to the point, in <u>Paschal v. Myers</u>, 129 N.C.App. 23 (1998) the North Carolina Court of Appeals

–8–

held that even the adoption of an employee handbook by the county as an ordinance was insufficient to overcome the presumption of at-will employment; however, the same ordinance was sufficient to create an enforceable property interest in continued employment. Id., at 28-29.

In this case, the civil service protections contained in the City Charter, while a basis for asserting a property interest protectable under the due process provisions of state and federal law, cannot be the basis for asserting an employment contract under North Carolina law. Plaintiff has not satisfied her burden of coming forward with admissible evidence of the existence a contractual obligation of defendant to the plaintiff. Summary judgment is appropriate on this claim and plaintiff's First Cause of Action will be dismissed with prejudice.

**B. Second Cause of Action: Section 1983 Fourteenth Amendment Due Process**

The essential elements of plaintiff's Fourteenth Amendment procedural due process claim are: (1) a property interest, (2) of which plaintiff was deprived by the defendant, (3) without due process of law. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 826 (4th Cir. 1995). As identified by the parties at the hearing, the critical element in dispute is whether plaintiff has a property interest in her position as RAC or rank of staff sergeant. A public employee in North Carolina only has a protected property interest in continued employment if the employee can show a legitimate claim to continued employment under a contract, state statute, or local ordinance. Peace v. Employment Sec. Comm'n, 349 N.C. 315, 321 (1998).

Defendant concedes that the City Charter creates a limited property interest in the rank of police officers who are promoted to sergeant, captain, major, or deputy chief. Defendant argues, however, that such property interest does not apply to plaintiff's reassignment as a

–9–

RAC, or even to her elevation to staff sergeant, because such assignment was never approved by the CSB, was within the rank of sergeant, and because it was only a temporary assignment.

CMPD first argues that while the terms "promotion" and "demotion" as used in Section 4.61(u) are not expressly defined by the City Charter, it has consistently and exclusively applied the "subject to approval" provision only to changes in rank, not the assignment of its officers within individual ranks. Putney Aff., at ¶¶ 11-13. Close review of the City Charter makes no distinction based on rank, but instead speaks broadly of "promotions" and then deals more precisely with the process before the CSB for "any demotion." City Charter § 4.61(u). Because the City Charter contains no definition of promotion or demotion, plaintiff cites the dictionary as the proper source for determining what those terms mean.

Defendant next contends that, like a number of other special assignments plaintiff received in her long career, such elevation to RAC was only a temporary special assignment and that it simply was not a promotion.[1] Plaintiff concedes that she received a number of

---

[1] The court can find very little case law on the nature of *state* property interests arising from temporary assignments. However, the Fourth Circuit does provide some guidance in a decision concerning a *federal* property interest in a temporary federal employment assignment:

> Unlike Tymshare[,] Pinar was temporarily promoted to fill a temporary need within the agency. The tentative nature of the promotion at issue in this case makes it reasonable to read the agreement between Pinar and the government as intending to reserve to the government the right to terminate the temporary promotion for less than cause, rather than intending to confer some *specie* of property interest to Pinar. Having failed to show a "legitimate claim of entitlement" to the retention of his temporary promotion, *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 (1972), Pinar was not entitled to due process prior to the termination of his temporary promotion.

-10-

special assignments in her 30 years with CMPD. Plaintiff's Dep., at 15-17, 23-24, & 27. Defendant points to the affidavits of Chief Monroe, who concludes that plaintiff was not promoted and discusses his view of promotions under the City Charter. While the court does not take issue with Chief Monroe's credibility and gives his opinion as an administrator under the City Charter deference, his affidavit does not dispute the fact that CMPD conducted a promotion ceremony, gave plaintiff new insignia of a higher rank within the rank of sergeant, provided plaintiff with a memorandum concerning "Your New Rank," provided plaintiff with authority over other sergeants, provided her with a take home car, and increased her pay. While Chief Monroe's averments are helpful on the employment customs and practices of his department, his legal conclusion that plaintiff was not promoted under the language of the City Charter touches on a question of law as the City Charter speaks for itself and its proper interpretation is a question of law. Forrest Creek Associates, Ltd. v. McLean Sav. and Loan Ass'n, 831 F.2d 1238, 1242 (4th Cir.1987).

In determining whether plaintiff was promoted, the court has looked to the undisputed evidence surrounding her selection and the events leading up to her service as RAC or staff sergeant:

(1) CMPD used a competitive process to select the 39 RACs;

(2) when plaintiff was selected, CMPD put on what it called a "promotion ceremony;"

(3) CMPD provided plaintiff with a memorandum entitled "Your New Rank";

(4) at the ceremony, CMPD provided the RACs with staff sergeant insignia, which

---

Pinar v. Dole, 747 F.2d 899, 915 (4th Cir. 1984). Thus, the issue of whether a property interest arises is not determined by the label "temporary" or "permanent" (terms which could certainly bear on the determination); instead, the inquiry is whether plaintiff had a "'legitimate claim of entitlement' to the retention of [her] temporary promotion ...." Id.

>           consisted of four chevrons, replacing the three chevrons they had been
>           awarded as sergeants;
>
> (5)      CMPD made the RACs (to whom staff sergeant insignia had been given)
>           responsible for sergeants in their command;
>
> (6)      the RACs were provided take home cars; and
>
> (7)      the RACs received increased pay.

Considering defendant's affidavits and exhibits in a light most favorable to the city, it appears that CMPD believed that these 39 promotions were not promotions because it never ran them through the CSB and that CMPD never took such step because it considered them to be special assignments. While arguing that special assignments were routine at all levels of the department, defendant conceded at the hearing that it had never before awarded an additional stripe to a person placed on a special assignment. Likewise, there was no evidence that CMPD ever put on a promotion ceremony for other special assignments or substantially increased pay for special assignments. There was evidence that it provided take home cars for some special assignments.

The challenge at this point is not to determine whether plaintiff has satisfied its burden of production to show that there are no genuine issues for trial, but whether defendant has satisfied its burden of persuasion to establish that there is a genuine issue meriting trial. As the Court held in Anderson, supra, the court must determine whether such evidence "is so one-sided that one party must prevail as a matter of law." Anderson, supra, at 252. In opposition to plaintiff's Motion for Summary Judgment, defendant has filed the First and Second Affidavits of Chief Monroe (#28 & #36), exhibits annexed thereto, and plaintiff's deposition excerpts (#28). While courts are not to decide summary judgment based on the credibility of the witnesses or the weight it believes a jury might give such evidence, the

court cannot find that the averments of Chief Monroe are sufficient to create a genuine issue as to any material fact. It is undisputed that CMPD represented to plaintiff, its other employees, and the public that it <u>promoted</u> 39 sergeants to the position of RAC and that during the "promotion" ceremony it provided those new staff sergeants with insignia of increased rank and responsibility for them to place on their uniforms.

While the court has given the averments of CMPD's chief administrator great deference concerning the employment customs and practices of the department under the City Charter , the court has afforded no weight to averments concerning whether what occurred here was a promotion, which, absent any disputed facts as to what occurred, is a legal conclusion. In determining whether a public employee has a property interest in employment turns not on the subjective belief of the employer, but on whether "existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement." <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577-78 (1972). In making such determination, federal courts turn to state law. <u>Bishop v. Wood</u>, 426 U.S. 341, 344-45 (1976). In North Carolina, "absent a contractual agreement specifying a definite period of employment, only '[a] statute or ordinance may create a property interest in continued employment'...." <u>Wilkins v. Guilford County</u>, 158 N.C.App. 661, 668 (2003) (citation omitted).

The centerpiece of defendant's argument is that it is not possible for plaintiff to have been promoted because the Chief never sought approval of such promotion by the CSB. The court has closely read the operable portion of the City Charter, which provides:

> **(u) Promotions and demotions.** The chief of the police department and the chief of the fire department shall have authority to make all promotions of officers of their respective departments, subject to majority approval of the Civil Service Board. Promotions are probationary for six months from the date they become effective. Any demotions, except voluntary demotions, shall be

-13-

> made only after written charges are preferred and a hearing held before the Civil Service Board. Except as otherwise provided, demotions must be approved by a majority vote of the Board.

Plaintiff's Tab 1, p. 4. The court can find no support in the language of the City Charter that would support defendant's argument that the Chief cannot make a promotion *without* approval of the CSB. Instead, the City Charter provides that the Chief of Police may promote officers "*subject to* majority approval of the civil service board," and then provides that "**[a]ny** demotions . . . shall be made only after written charges are preferred and a hearing held before the Civil Service Board." City Charter, § 4.61(u). Clearly, the language "subject to" can reasonably be read to permit the Chief to promote and then seek CSB approval.

Defendant has also argued that a promotion can only be from one established rank to another established rank. The court can find no language in the City Charter that either defines a promotion as movement from one established rank to another or provides that a within rank promotion is not a promotion. As the City Charter does not define promotion, the court has applied the common dictionary definition to the word "promotion," as argued by plaintiff.

The undisputed evidence before the court clearly shows that plaintiff was promoted in 2008 to the rank of staff sergeant. The City Charter clearly delegates authority to the Chief of Police to "make all promotions" which are then "subject to" approval by the CSB. When the language of the City Charter is combined with the undisputed actions of the CMPD in representing to plaintiff and the public that she had been *promoted*, plaintiff had legitimate claim of entitlement to continued employment as a staff sergeant.

Inasmuch as plaintiff had a cognizable property interest under state law, the next issue is whether plaintiff received due process when she was demoted in 2010. The City
-14-

Charter clearly requires notice and an opportunity to be heard prior to the City making "[a]ny demotion." See City Charter, § 4.61(u). In contrast to the open-ended language concerning promotions, the City Charter is very specific that due process in required before "**[a]ny demotions.**" Id. (emphasis added). There is no language in such provision limiting due process protections only to promotions that have received board approval; instead, the language speaks to "[a]ny demotion." Id.[2] While defendant pointed out at the hearing that plaintiff did receive some process, it is undisputed that such process did not meet the requirements of procedural due process, which include reasonable notice and an opportunity to be heard. Thus, summary judgment in favor of plaintiff on this claim is appropriate, leaving to the jury a determination of damages.

### C. Third Cause of Action: Section 1983 Claim Based on the Contracts Clause

Plaintiff alleges in her third cause of action that her demotion without a hearing also

---

[2] In Fewer v. City and County of San Francisco, 240 Fed.Appx. 185, 2007 WL 1729683 (9th Cir. June 15, 2007), the Court of Appeals for the Ninth Circuit addressed what appears to be a nearly identical issue:

> Appellants' promotions-which lacked approval of the Mayor and Controller, validation by Human Resources, and for which appellants had neither completed probation nor separated from their former rank-failed to comply with the civil service rules governing permanent appointments. See Civil Service Rule 35; Civil Service Rule 40; Annual Salary Ordinance § 1.1. They were thus temporary promotions that created no due process property interest in continued employment at the rank of lieutenant. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir.1998); *Skelly v. State Personnel Bd.*, 15 Cal.3d 194, 206, 124 Cal.Rptr. 14, 539 P.2d 774 (Cal.1975); *cf. Jenkins v. County of Riverside*, 398 F.3d 1093, 1094-96 (9th Cir.2005).

Id., 240 Fed.Appx. at 186. This case was not cited by the parties. While this unpublished decision would appear to support defendant's position, the brevity of the appellate decision as well as some patent factual distinctions cause this court to hesitate to place much reliance on such authority.

-15-

violates the Contracts Clause found in Article I, Section 10 of the United States Constitution. A Section 1983 claim for violation of the Contracts Clause will only be found where:

> a state has denied a citizen the opportunity to seek adjudication through the courts as to whether a constitutional impairment of a contract has occurred, or has foreclosed the imposition of an adequate remedy for an established impairment.

Crosby v. City of Gastonia, 635 F.3d 634, 640 (4th Cir. 2011). Reading the Complaint in a light most favorable to plaintiff, she has alleged that the defendant has breached an employment contract it had with her and it denied her due process in the termination of such contract. There are, however, no allegations that the defendant attempted to hinder her access to this or any other court to challenge that alleged breach. The appellate court noted in Crosby that

> if the offended party retains the right to recover damages for the breach, the Contracts Clause is not implicated; if, on the other hand, the repudiation goes so far as to extinguish the state's duty to pay damages, it may be said to have impaired the obligation of contract.

Id., at 642, fn. 7. No argument can be made that plaintiff's alleged demotion extinguished her right to seek damages. Further, there is no argument that defendant lacks the ability to pay any breach of contract damages that may be found. The ability of plaintiff to bring her breach of contract claim in this action belies the survivability of a Section 1983 claim for violation of the Contracts Clause. Id.

The court will grant summary judgment on this claim and dismiss it with prejudice.

**D.     Fourth Cause of Action: Law of the Land Claim**

In her fourth cause of action, plaintiff contends that the same conduct which supports her Section 1983 claim for denial of due process supports her state-law claim for violation of the Law of the Land Clause of the North Carolina Constitution. In North Carolina v. Fowler, 197 N.C.App. 1 (2009), the North Carolina Court of Appeals held that "the law of

-16-

the land clause has the same meaning as due process of law under the Federal Constitution." Id., at 20 (internal quotation marks and alterations omitted). Because plaintiff is entitled to summary judgment as to her Fourteenth Amendment claim, summary judgment will be granted in plaintiff's favor on this claim for the same reasons.[3]

### E. Fifth Cause of Action: General Violations of the North Carolina Constitution

In her fifth claim, plaintiff alleges violation of the City's legislatively delegated powers under N.C. Const. Art. VII, § 1 and N.C. Session Law 2000-26, which is in turn based on an alleged violation of the City Charter. A city's violation of its own charter does not amount to a cause of action under state law, Vanasek v. Duke Power Co., 132 N.C. App. 335, 339 n.2 (1999), and plaintiff cannot resort to a violation of the state constitution where another state remedy exists. Alt v. Parker, 112 N.C. App. 307, 317 (1993). Summary judgment will be granted as to this claim, and it will be dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#23) and the defendant's Motion for Summary Judgment (#25) are **GRANTED** in part and **DENIED** in part as follows:

(1) summary judgment in favor of defendants is **GRANTED** as to the First, Third, and Fifth Causes of Action, and such claims are **DISMISSED** with prejudice; and

(2) summary judgment in favor of plaintiff is **GRANTED** as to the Second and Fourth Causes of Action on the issue of liability only. Damages will be

---

[3] As plaintiff is not be entitled to two recoveries for the same wrong, plaintiff should be prepared to discuss election of remedies at the final pretrial conference.

-17-

determined at trial.

**IT IS FURTHER ORDERED** that this matter be calendared for calendar call on the December 5, 2011, civil trial term.

Signed: November 28, 2011

Max O. Cogburn Jr.
United States District Judge